UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY S. TAYLOR,

    Plaintiff,

Case No. 1:14-cv-75

v.

Hon. Hugh W. Brenneman, Jr.

PRECISION PROPERTY MANAGEMENT
and COUNTRY CLUB GREEN
CONDOMINIUMS,

    Defendants.
_____/

## OPINION

Plaintiff filed the present diversity action against defendants Precision Property Management ("PPM"), and the Country Club Green Condominium Association (sometimes referred to as the "Association") as the result of a dispute involving the collection of unpaid fees and assessments related to plaintiff's condominium unit.[1] This matter is now before the court on defendants' motion for summary judgment (docket no. 31).

    **I.**    **Background**

Plaintiff set forth the following allegations in his complaint. On July 24, 2012, plaintiff, the owner of Unit C-1 (sometimes referred to as the "property"), executed "a rent-to-own land contract agreement" (the "land contract") in which he sold this unit to Essence Wade Moore. Compl. at ¶ 6 (docket no. 1). The land contract utilized forms provided by PPM and "clearly set forth that purchaser Essence Moore was to be responsible for all future monthly assessments

---

[1] The Court notes that the caption of the complaint refers to the Association as "Country Club Green Condominiums."

including association fees, and was ultimately signed off on by Jan Demmink, head of Country Club Green Condominium Association." *Id.* Although plaintiff's claim arises in the context of the land contract, he did not include a copy of that document with the complaint. Under the land contract, Ms. Moore agreed to take financial responsibility for the assessments, but she did not agree to pay those assessments to the Association. Rather, Ms. Moore agreed to pay the assessments to plaintiff:

> 19. Condominium Association
>
> The buyer acknowledges that rules and regulation regarding this property are established by the Country Club Green Condominium Association and Precision Property Management. The Buyer agrees to abide by all property by-laws, rules, and regulations. The current monthly Association Fee is $198 and can change by vote of the members. *This amount is payable to the seller along with the rent*.

Land Contract (docket no. 31-2 at p. ID# 122) (emphasis added).

Plaintiff alleged that during the period covered by the land contract, "several frivolous and/or baseless complaints were alleged against Ms. Moore, including dirty carpet outside her doorway which may or may not have been caused by the movement of furniture gifted to Ms. Moore by Ms. Demmink; trash dumping without the use of a plastic bag; and usage of bad language outside building C in which she resided." *Id.* at ¶ 7. Ms. Moore was not granted an opportunity to object to these claims, "which instead were representative of an unfortunate pattern of discriminatory harassment perpetrated by PPM and Country Club Green against Ms. Moore as the former simply did not want Ms. Moore residing on the premises and went so far as to execute a receipt for damages against Ms. Moore for which she continues to insist she was not responsible." *Id.* at ¶ 7.

While plaintiff does not allege the amount of the claimed damages, or provide a copies of the invoices, defendants submitted copies of the invoices which PPM sent to both plaintiff

and Ms. Moore. The invoices, dated September 10, 2012, were in the amount of $75.00 with the description "Clean new carpet by C-1 Doorway." *See* Invoices (docket nos. 31-7 and 31-8). Plaintiff's invoice included a handwritten note:

> Gary,
>
> We had to clean the carpet in from of the doorway to C-1. The carpet is only one month old and it was filthy in front of the door. Send check for $75.00. Invoice attached. Jim

Invoice (docket no. 31-8). Defendants also provided a Work Order for carpet cleaning from Guarantee System of West Michigan to the Association in the amount of $75.00 for "C-1 Clean carpet by doorway - rebilled to owner." *See* Work Order (docket no. 31-5).

Plaintiff's allegations suggest that he had no contact with defendants between September 10, 2012 and January 22, 2013, when "without prior notice to Plaintiff, attorney David T. Caldon of the office of Law Weathers, acting on behalf of the Defendants forwarded a notice of purported condominium assessment delinquency to the Plaintiff after previously dealing exclusively with Ms. Moore, this notice threatening collection against Mr. Taylor if no response was offered within thirty days; the Plaintiff did subsequently offer a formal written objection to this claimed debt." Compl. at ¶ 8. While not referenced in the complaint, plaintiff had contacted PPM about changing his monthly payment method prior to receiving the letter from Attorney Caldon. Specifically, on November 5, 2012, plaintiff sent an e-mail to Cheryl Condon, PPM's property manager, advising her to terminate his automatic monthly payments for Unit C-1:

> My auto debit charge needs to be changed effective December 2012 [sic] the auto pay is to be stopped permanently. I will make payments monthly by a different method or they will be paid by Essence Wade Moore the new owner. Please note my hew address as well.

E-Mail (docket no. 31-10 at p. ID# 178). In response, Ms. Condon stated,

> Thank you Gary for your email. I will submit your request to Accounting today. November is the last month we will pull from your account.

*Id.* It is unclear from the e-mail as to whether the terminated monthly "auto pay" involved the $198.00 monthly assessment or some other monthly fee.

In the January 22, 2013 letter, Attorney Caldon stated that his office represented the Association, and advised plaintiff that Unit C-1 "is delinquent in the payment of assessments to the Association" and that "[t]his delinquency totals $571.00 as of January 22, 2013." Caldon Letter (1/22/13) (docket no. 31-11 at p. ID# 180). Attorney Caldon further advised plaintiff:

> We have been instructed to begin collection efforts to collect the debt. Since this process could prove costly to you, it would probably be in your best interest to contact me immediately to resolve this matter and, if necessary, to arrange some type of payment plan. If we have not heard from you within 30 days of receipt of this letter, we have little choice but to take further action to collect the debt.

*Id.*

Plaintiff alleged that he "offer[ed] a formal written objection to this claimed debt." Compl. at ¶ 8. Plaintiff is apparently referring to a letter, dated February 1, 2013, which he sent to Attorney Caldon stating as follows:

> The $571.00 debt you presented is not valid. It begins with a $75 charge which is not my responsibility. Then they have added $25 per month late charges. I am holding the condo association fee in escrow until this charge is removed along with the late charges. The person living in C-1 is accused of making the carpet dirty but denies this claim. As far as I know they should be attempting to collect this debt from her or someone else. Please contact the Condo Association and have them correct this debt.

Taylor Letter (2/1/13).

Plaintiff alleged that on February 5, 2013, Attorney Caldon (who is not a party to this litigation) sent a letter to plaintiff verifying defendants' intent to pursue collection against plaintiff rather than Ms. Moore, "despite the fact that the Defendants had previously sought collection in

4

similar situations directly from three prior purchasers of the Plaintiff who came to subsequently reside on the Defendants' premises, residents Heath Troupe, Tom Grant, and Antoinette Lott." *Id.* at ¶ 9. Plaintiff did not attach a copy of Attorney Caldon's February 5th letter to his complaint and did not include any allegations or documents related to the "similar situations" involving plaintiff's prior purchasers Troupe, Grant and Lott.

Attorney Caldon's February 5th letter provided in pertinent part as follows:

Thank you for your letter. I have verified with the association that you are responsible for this debt as the co-owner of the unit. In this regard, please refer to that [sic] attached invoice and Article VI, Section 16 of the Condominium Bylaws which provides:

> "Each co-owner shall be responsible for damages or costs to the Association resulting from negligent damage to or misuse of any of the common elements by him, or his family, guests, agents or invitees. . . Any costs or damages to the Association may be assessed to and collected from the responsible co-owner in the manner provided in Article II hereof."

Please note that, pursuant to Section 139 of the Michigan Condominium Act, being MCL 559.139, you do not have the right to set off against dues owed to the Association due to your dissatisfaction with services rendered. Accordingly, if you fail to make payment immediately the Association has directed me to proceed with applicable enforcement measures.

If you have any questions, please feel free to call.

Caldon Letter (2/5/13) (docket no. 31-13 at p. ID# 184). There is no allegation that plaintiff responded to the February 5th letter.

Plaintiff alleged that on February 28, 2013, a Notice of Lien was recorded with the Kent County Register of Deeds "on behalf of the defendants." *Id.* at ¶ 10. Plaintiff did not include a copy of this Notice with his complaint. However, defendants provided a copy of the Notice, which claims a lien against Unit C-1, "pursuant to Section 108 of the Michigan Condominium Act, Act No.

5

59 of the Public Acts of Michigan of 1978, as amended." *See* Notice of Lien (docket no. 31-14 at p. ID# 187).  Contrary to plaintiff's allegation, the Notice of Lien was not on behalf of both defendants, but rather arose from a claim made by the Association for "unpaid assessments" against the unit in the amount of $852.00, "exclusive of interests, costs, attorneys' fees and future assessments." *Id.*

Plaintiff alleged that on March 12, 2013, a First Amendment to the Notice of Lien was recorded which identified him as a land contract vendor rather than owner of the premises, and adding Ms. Moore as land contract vendee.  Compl. at ¶ 12.  Plaintiff did not include a copy of the First Amendment with his complaint.  Plaintiff's allegation is not an accurate representation of the substance of the First Amendment, which amended Section 3 of the Notice of Lien.  Section 3 of the original Notice of Lien identified the "Owner" as follows,  "[t]he owner of record is Gary S. Taylor, 1141 Vail Court, Lansing, Michigan 48917."  Notice of Lien.  The First Amendment to the Notice of lien also identified plaintiff as not only the land contract vendor but as an owner of the premises:

> The owner of record of the Premises is Gary S. Taylor, with an address of 1141 Vail Court, Lansing, Michigan 48917, as land contract vendor, and Essence Wade Moore, whose residence is 2759 Leonard Street, C-1, N.W., Grand Rapids, Michigan 49504, as land contract vendee.

First Amendment to Notice of Lien (docket no. 31-15 at p. ID# 191).

Plaintiff alleged that on March 27, 2013, he sent an e-mail to Jan Demmink of the Association, outlining that the rent-to-own land contract, transfer of ownership, and application as required by PPM had been forwarded to "them" on July 24, 2012, that the Association's board members had met with Ms. Moore to explain the requirements of her ownership, and that the $75 cleaning charge from which this dispute originally arose was never presented to Ms. Moore for verification or objection.  Compl. at ¶ 13.

6

Plaintiff makes no allegations regarding any events which transpired between the date he sent the e-mail on March 27, 2013 and September 2013. Plaintiff alleged that on September 16, 2013, the office of Law Weathers forwarded notification of the First Amendment to Notice of Lien to plaintiff and Ms. Moore "with the addendum that should payment not be received within ten days, the Defendants would foreclose on the property at issue." *Id.* at ¶ 14. Plaintiff's allegations do not accurately reflect the substance of that letter. Specifically, the letter explicitly stated that the Association (as opposed to both defendants) would commence foreclosure proceedings:

> As you know, our office represents Country Club Green Condominium Association. Enclosed you will find a First Amendment to Notice of Lien which was recorded with the Kent County Register of Deeds on March 12, 2013 as Instrument No. 20130312-0025790. In accordance with the Master Deed and Bylaws of the Association, you are hereby notified that, in the event you fail to make payment of the total amount due to the Association within 10 days, the Association will initiate foreclosure of your property. Make note that if the Association commences foreclosure then, in addition to all sums presently owing to the Association, you will also be responsible for all legal and publication costs incurred should you wish to come current (or redeem your unit after foreclosure).
>
> If you have any questions or comments, please feel free to call.

Caldon Letter (9/16/13) (docket no. 31-16 at p. ID# 194).

Although not referenced in his complaint, plaintiff took action against his purchaser after receiving Attorney Caldon's letter. The record reflects that plaintiff filed a Forfeiture Notice (Land Contract) against Ms. Moore on October 15, 2013, and then filed a "Complaint for possession after land contract forfeiture" on October 31, 2013. *See* Forfeiture and Complaint (docket no. 31-17 at pp. ID## 196-201). Plaintiff's complaint for possession states that as of October 31, 2013, Ms. Moore was in arrears in the amount of $2,250.00, having paid only $750.00 for the period of April 2013 through September 2013. Compl. at p. ID# 198.

Plaintiff alleged that on November 20, 2013, "after appropriate notice had been requested via publication and posting by the Defendants, a foreclosure sale of the property at issue was undertaken at the Kent County Courthouse." Compl. at ¶ 15. Plaintiff further alleged that:

> On repeated occasions prior to the Sheriff's Sale, the Plaintiff attempted to communicate with the Defendants regarding the amount required to settle the matter and in fact made several large payments with the assurance the matter against Ms. Moore would be dropped, but despite this fact, the Defendants pursued foreclosure anyway; indeed, at a board meeting held on November 18, 2013, Jan Demmink effectively advised the Plaintiff he should not bother attending as "it won't make a difference" and that the decision to foreclose had already effectively been ratified by the Country Club Green board, the board meeting then effectively representing a kangaroo court.

*Id.* at ¶ 17.

Based on these allegations, plaintiff has set forth six counts against both defendants. In Count I, plaintiff alleged that defendants violated three provisions of the Fair Debt Collection Practices Act, 15 U.S.C § 1692 *et seq.* ("FDCPA"). First, defendants violated § 1692(g)(b) because they failed "failed to identify any rationale for the collection action initiated against the Plaintiff for failures specifically associated with Essence Moore, aside from attorney David T. Caldon offering in his February 5, 2013 letter to the Plaintiff that he had verified with the Defendants that the Plaintiff was responsible as a result of Condominium bylaws that were no longer applicable to the Plaintiff following the land contract sale to Ms. Moore." Compl. at ¶ 22. Second, defendants violated § 1692e because they "misrepresented the character, amount, and/or legal status of the purported debt, and not only threatened to, but did in fact take action it could not legally take, going so far as to amend its' initial Notice of Lien and add Essence Moore as a party in interest when it likely realized it might have little recourse against the Plaintiff specifically and obviously intended to 'cover all its' bases.' " *Id.* at ¶ 24. Third, defendants violated § 1692f "by attempting to collect and in fact collecting amounts that were not permitted by law from the Plaintiff." *Id.* at ¶ 25.

Pursuant to § 1692k, plaintiff seeks an award of actual damages plus up to $1,000.00 for each violation of the FDCPA, plus costs and a reasonable attorney's fee. *Id.* at ¶ 26.

In Count II, plaintiff alleged that defendants breached a contract, specifically the Condominium Bylaws (the "Bylaws") which constituted a contract between the Association, PPM and plaintiff. *Id.* at ¶ 29. While acknowledging that co-owners are responsible for damages under Article VI, Section 16 of the Bylaws, *see supra*, plaintiff claims that the Association breached this provision of the Bylaws, "first by imputing negligence and misuse to Essence Moore without evidence or admission tying her to such, and secondarily by assigning the Plaintiff equal blame in such purported negligence despite the fact that the agreement executed between the Plaintiff and Ms. Moore and explicitly ratified by the Association set forth that was in fact no longer a co-owner and thus not subject to the bylaw at issue." *Id.* at ¶ 31. Plaintiff asks the Court for relief including declaring the Sheriff's Sale null and void, setting aside the Sheriff's Deed, and awarding plaintiff unspecified damages, costs and actual attorney's fees. *Id.* at ¶ 33.

In Count III, plaintiff alleged that defendants engaged in unfair, unconscionable, or deceptive methods, acts or practices in violation of the Michigan Consumer Protection Act, M.C.L. § 445.903 ("MCPA"), "by causing a probability of confusion and misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction, and by failing to reveal material facts, the omission of which tends to mislead or deceive the consumer." *Id.* at ¶ 35. Among other relief, plaintiff seeks actual attorney's fees. unspecified equitable relief and damages "in an amount in excess of $25,000.00." *Id.* at p. ID# 9.

In Count IV, plaintiff alleged that the Association, through its agent Law Weathers, committed slander of title in violation of M.C.L. § 565.108, by foreclosing on the Notice of Lien,

9

when the Association knew, or should have known, that it lacked authority to proceed with the foreclosure. *Id.* at ¶ 39. Plaintiff claims that "[e]ach of the Defendants was given an opportunity to rectify the lawful [sic] actions it had taken, and each refused to do so," and that defendants' actions "were taken with the intent to cause injury to the Plaintiff and/or with a reckless disregard as to whether injury would be caused." *Id.* at ¶¶ 40-41. Among other relief, plaintiff seeks attorney's fees, unspecified equitable relief, and damages in excess of $25,000.00. *Id.* at p. ID# 10.

In Count V, plaintiff alleged that defendants committed slander of title pursuant to M.C.L. § 565.25, by encumbering property with the intent to harass or intimidate him. *Id.* at ¶ 44. Plaintiff seeks unspecified damages for relief. *Id.* at ¶ 45.

In Count VI, plaintiff alleged that defendants violated Michigan's Foreclosure by Advertisement statutes, M.C.L. § 600.3201, *et seq.* by not providing him with the surplus of approximately $2,000.00 remaining at the time of the Sheriff's Sale and by failing to record the Sheriff's Deed within 20 days. *Id.* at ¶¶ 49-56. Plaintiff seeks relief including damages in excess of $25,000.00, attorney's fees, a declaration that the Sheriff's Sale is void, an order setting aside the Sheriff's Deed, and unspecified ordinary and exemplary damages. *Id.* at pp. ID## 12-13.

Finally, plaintiff's complaint includes a cryptic reference to a violation of the Michigan Regulation of Collection Practices Act, M.C.L. § 445.251 *et seq.* ("MRCPA"). *See* Compl. at ¶ 1. While plaintiff's complaint made a single reference to the MRCPA, he did not include a separate count under the MRCPA, did not allege that defendants violated any particular statute within the MRCPA, and did not include a claim for relief based upon the MRCPA. Rather, plaintiff did not address his MRCPA claim until two months after the close of discovery when he sought a civil fine and attorney's fees under M.C.L. § 445.257 as part of his response to defendants'

10

motion for summary judgment. Plaintiff's Response (docket no. 33 at pp. ID## 246). Even at that late stage, plaintiff did not set forth any specific statute within MRCPA which defendants violated, other than to state that MRCPA "largely parallels the Fair Debt Collection Practices Act with one particularly relevant distinction - whereas the national law apples only to debt collectors, the state law applies directly to creditors and lenders." *Id.* at p. ID# 246. Defendants contend that permitting plaintiff to raise a new claim in a response to a motion for summary judgment, especially when the plaintiff knows of the purported factual basis for the claim but neglects to move for leave to amend his complaint "would subject defendants to unfair surprise." *Tucker v. Union of Needletrades, Industrial & Textile Employees*, 407 F3d 784, 787-89 (6th Cir. 2005). Based on the present record, and the lack of briefing on this issue, it is unclear whether defendants can claim "unfair surprise" with respect to the MRCPA claim. Accordingly, for purposes of this opinion, the Court will treat the MRCPA claim as one of the state claims alleged in this action.

## II. Developments since plaintiff filed his complaint

There have been two relevant developments since plaintiff filed his complaint on January 22, 2014. First, the Sheriff's Deed, between Pat McCullough, Deputy Sheriff, Kent County Sheriff's Department, as grantor, and D & B Asset Management LLC, as grantee, was recorded on January 23, 2014. *See* Sheriff's Deed (docket no. 31-8 at pp. ID## 203-05). Second, plaintiff testified at his deposition that he redeemed the property from D&B Asset Management and sold the property to Danny Echert. Taylor Dep. at pp. 17-19 (docket no. 31-3 at p. ID# 127). These developments may render some of plaintiff's claims for relief moot.

### III. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### IV. Discussion

#### A. FDCPA (Count I)

##### 1. Plaintiff's FDCPA claims against the Association

The purpose of the FDCPA (sometimes referred to as the "Act") is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA applies only to "debt collectors" as defined by the Act. *Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 457 (6th Cir. 2013). The FDCPA includes a general definition of a "debt collector," *see* 15 U.S.C. § 1692a(6), followed by a number of exceptions, *see* 15 U.S.C. § 1692a(6)(A)-(F). *Id.* Under the general definition,

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). In light of this plain language used in the general definition, "it [is] well-settled that a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *MacDermid v Discover Financial Services*, 488 F.3d 721, 734-35 (6th Cir. 2007) (internal quotations, citation, and parentheses omitted). *See Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) ("as to a

specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive") (*quoting FTC v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir.2007)).

   The FDCPA does not apply to the Association, because the only debts at issue in this case are the assessments which plaintiff owed to it.  The Association was not seeking to collect a debt owed to another party, but rather to collect assessments which plaintiff owed the Association under Article II of the Bylaws.  *See* Bylaws, Article II, § 2  (docket no. 31-6 at p. ID# 151) ("[a]ll costs incurred by the Association in satisfaction of any liability arising within, caused by or in connection with the common elements or the administration of the Condominium shall be expenses of administration within the meaning of Sections 13 and 15 of Public Act 229 of 1963, as amended"); Bylaws, Article II, § 6 (p. ID# 152) ("The Association may enforce collection of delinquent assessments by suit at law for a money judgment or by foreclosure of the lien securing payment in the same manner that real estate mortgages may be foreclosed by action under Michigan law.  In an action for foreclosure, a receiver may be appointed to collect a reasonable rental for the apartment from the co-owner thereof or any persons claiming under him.  The expenses incurred in collecting unpaid assessments including interest, costs and attorneys' fees and advances for taxes or other liens paid by the Association to protect its lien shall be chargeable to the co-owner in default, and shall be secured by the lien on his apartment.").  *See also*, Bylaws, Article VI, § 16 (p. ID# 158) ("Any costs or damages to the Association may be assessed to and collected from the responsible co-owner in the manner provided in Article II hereof").

   Because the Association was merely a creditor, the FDCPA does not apply to any action it took to collect the unpaid assessments which plaintiff owed to it.  As the court explained

14

in *Madura v. Lakebridge Condominium Association Inc.*, 382 Fed. Appx. 862, 864-65 (11th Cir. 2010), a condominium association which authorized its property manager to collect unpaid assessments "was not subject to the FDCPA because it was no debt collector; it was a creditor. *See* 15 U.S.C. § 1692a(6) defining 'debt collector' as 'any person who . . . regularly collects . . . debts owed . . . or due another;' and 15 U.S.C. § 1692a(4) defining 'creditor' as 'any person . . . to whom a debt is owed.' " *See Brooks-McCollum v. Aspen Property Management Company*, 551 Fed. Appx. 677, 679-80 (4th Cir. 2014) ("[t]he officers of the homeowner's association are not debt collectors under the FDCPA, *see* 15 U.S.C. § 1692a(4), (6)(A)"); *McDermid*, 488 F.3d at 735 (it is well-settled that a creditor is not a debt collector for the purposes of the FDCPA and that creditors are not subject to the FDCPA when collecting their accounts) (internal quotation marks and citation omitted). Accordingly, the Association's motion for summary judgment will be granted as to Count I.

### 2. Plaintiff's FDCPA claims against PPM

Similarly, plaintiff has no FDCPA claims against PPM because it is not a "debt collector" as defined under the Act. Here, PPM issued a $75.00 invoice for carpet cleaning in the common area outside of the property. PPM is excepted from classification as a "debt collector" under two exceptions in 15 U.S.C. § 1692a(6), which provides that the term "debt collector"

> . . . does not include: . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement . . . (iii) concerns a debt which was not in default at the time it was obtained by such person[.]

15 U.S.C. § 1692a(6)(F)(i) and (iii).

        **a.**      **PPM is not a debt collector pursuant to 15 U.S.C. § 1692a(6)(F)(i) because its collection efforts were incidental to its fiduciary duty owed to the Association**

The Association's Board is authorized to employ a professional management agent to perform a number of duties, which include collecting assessments from the members of the Association. *See* Bylaws, Article I, §§ 4(a)(2) and (b) (docket no. 31-6 at pp. ID## 149-50). The Association entered into a Condominium Association Management Agreement ("Management Agreement") appointing PPM as its agent to manage the Association's property. *See* Management Agreement (docket no. 31-21 at p. ID# 214). As the Association's agent, PPM "is a fiduciary and owes to [its] principal the duty of good faith and loyalty." *Burton v. Burton*, 332 Mich. 326, 337, 51 N.W.2d 297 (1952). The terms of the Management Agreement explicitly authorized PPM to collect assessments:

> **2.1    Collection of Assessments**
>
> Agent shall collect (and give receipts for, if necessary) all monthly and other assessments and/or monies that are due the Association with respect to the Property and for all rental or other payments from co-owners and/or concessionaries, if any. The Board may direct Agent to process legal action on delinquent assessments.

Management Agreement at § 2.1 (docket no. 31-21 at p. ID# 214).

Under 15 U.S.C. § 1692a(6)(F)(i), a property manager who collects a debt as the agent of a condominium association is not a "debt collector" under the FDCPA. *See Harris v. Liberty Community Management, Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012) (property management company's collection of unpaid assessments was not a debt collector under the FDCPA because its collection of unpaid assessments was "incidental" to its "bona fide fiduciary obligation[s]" to the condominium homeowner's association under § 1692a(6)F)(i)); *Berndt v. Fairfield Resorts, Inc.*,

339 F.Supp.2d 1064, 1068 (W.D. Wis. 2004) (property manager "was acting incidentally to a bona fide fiduciary obligation when it collected the maintenance fees on behalf of the Association" and was therefore exempt from debt collector status under 15 U.S.C. § 1692a(6)(F)(i)). *See also*, *Reynolds v. Gables Residential Services, Inc.*, 428 F. Supp. 2d 1260, 1264 (M.D. Fla. 2006) (property management company that collected rent for an apartment complex owner could not be considered a "debt collector" under 15 U.S.C. § 1692a(6)(F)(i), because the property manager had a fiduciary duty to collect rent and corresponding fees from the tenants in the complex and the money was payable to the property management company "not as a debt collector but as Manager of the property"); *Johnson v. Young*, No. 2:06-cv-818, 2007 WL 2177956 at *3 (S.D. Ohio July 27, 2007) (citing § 1692a(6)(F), the court found that a property manager collecting rental payments incidental to her fiduciary duties owed to the property owner stands in the shoes of the owner and is not a debt collector within the meaning of the FDCPA). Accordingly, PPM's motion for summary judgment will be granted as to Count I because it is not a debt collector under § 1692a(6)(F)(i).

      **b.**    **PPM is not a debt collector pursuant to 15 U.S.C. § 1692a(6)(F)(iii) because its collection efforts concern a debt which was not in default at the time PPM obtained it**

Courts have also applied the exception in § 1692a(6)(F)(iii) to property managers who collect delinquent rent and other fees. Here, PPM began managing the Association's property on April 1, 2005, more than seven years before plaintiff entered into the Land Contract with Ms. Moore. *See* Management Agreement, § 1 (docket no. 31-21 at p. ID# 214). Under 15 U.S.C. § 1692a(6)(F)(iii), a property manager who collects a debt on behalf of the owner is not a "debt collector" under the FDCPA where the debt was not in default at the time that the manager obtained it. *See Brooks-McCollum*, 551 Fed.Appx. at 680 (holding that the property management company

17

for a homeowner's association is not a debt collector under the FDCPA, citing the exception under 15 U.S.C. § 1692a(6)(F)(iii) ). As the court explained in *Alexander v. Omega Management, Inc.*, 67 F.Supp.2d 1052 (D. Minn.1999):

> In this case, it is undisputed that Defendant [property management company] was responsible for collecting assessments [for a homeowner's association] on a monthly basis, and has been since 1993, Thus [sic], Defendant "obtained" the right to collect the [1998] assessments before they became overdue. Defendant is therefore not a "debt collector" under the § 1692a(6)(F)(iii) exception because Defendant is attempting to collect a debt "which was not in default at the time it was obtained." 15 U.S.C. § 1692a(6)(F)(iii)[.]

*Alexander*, 67 F.Supp.2d at 1055. *See Azar v. Hayter*, 874 F.Supp. 1314, 1319 (N.D. Fla.1995) (the management company responsible for collecting condominium association's fees from an owner was not a "debt collector" under the § 1692a(6)(F)(iii) exception), *affirmed*, 66 F.3d 342 (11th Cir.1995). *See also*, *Carter v. AMC, LLC*, 645 F.3d 840, 844 (7th Cir. 2011) (defendant property management company was not a "debt collector" under § 1692a(6)(F)(iii) where it managed the property prior to the time that the plaintiff tenant got behind on her rent); *Glazer*, 704 F.3d at 457 (mortgage servicing company was not a debt collector under § 1692a(6)(F)(iii) because it obtained the authority to service the loan before default); *Ramsay v. Sawyer Property Management of Maryland LLC*, 593 Fed. Appx. 204, 206 (4th Cir. 2014) ("[a] rental agent generally 'obtains' a debt when a lease is executed, which necessarily predates a default under the lease, unless the agent's relationship with its principal begins at some later date"). Accordingly, PPM's motion for summary judgment will be granted as to Count I based because it is not a debt collector under§ 1692a(6)(F)(iii).

### B. Plaintiff's state law claims

Plaintiff's remaining claims alleged in Counts II, III, IV, V and VI, and his claim for violation of the MRCPA, arise under state law. The Court exercised its supplemental jurisdiction

over plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims appeared to be intimately related to the alleged violation of the FDCPA. *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy"). The dismissal of plaintiff's federal claims against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against these defendants. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claims, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996).

Here, plaintiff's federal claims are without merit. There is no reason to retain supplemental jurisdiction over plaintiff's remaining state law claims. Such claims involve a number of state law issues including: interpretation of a "rent-to-own" land contract to sell a condominium; interpretation of a condominium association's bylaws; a notice of lien and its amendment; the eviction of the land contract purchaser from a condominium unit; the foreclosure of a condominium unit; a Sheriff's Sale of the condominium unit; the redemption of a condominium unit by its owner; and a subsequent sale of the unit. Plaintiff has alleged breach of contract, violations of the state's foreclosure laws, slander of title arising under two state statutes, a violation of a state consumer

19

protection law and a violation of a state collection practices law. In addition, this entire controversy took place within the context of the Michigan Condominium Act, M.C.L. § 559.101 *et seq.*, which "establishes a statutory framework for condominium property within the State." *In re Spencer*, 457 B.R. 601, 609 (E.D. Mich. 2011). Given these considerations, the interests of justice and comity are best served by deferring to Michigan's courts, which are best equipped to interpret and apply their own state's law governing the Michigan Condominium Act, breach of contract, slander of title, foreclosure, the MRCPA and the MCPA. *See Widgren v. Maple Grove Township*, 429 F.3d 575, 586 (6th Cir. 2005) (the district court properly declined to exercise supplemental jurisdiction over the state law issues after it considered that the interests of justice and comity were best served by having the state court resolve the remaining state law claims.) Accordingly, plaintiff's state law claims alleged in Counts II, III, IV, V and VI, and his MRCPA claim, will be dismissed.

### V.     Conclusion

Defendants' motion for summary judgment (docket no. 31) will be **GRANTED** as to Count I. Defendants' motion will be **DENIED** without prejudice as to the state law claims alleged in Counts II, III, IV, V and VI, and the MRCPA claim, with all of these state law claims to be **DISMISSED** pursuant to 28 U.S.C. § 1367. A Judgment consistent with this opinion shall be issued forthwith.


Dated:  April 17, 2015                                  /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge